IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

YOKAMON LANEAL HEARN,     §
    §
             Petitioner, §
    §
VS.     § Civil Action No. 3:04-CV-0450-D
    §
NATHANIEL QUARTERMAN, Director, §
Texas Department of Criminal     §
Justice, Correctional     §
Institutions Division,     §
    §
            Respondent. §

MEMORANDUM OPINION
AND ORDER

Petitioner Yokamon Laneal Hearn ("Hearn") moves pursuant to Fed. R. Civ. P. 59(e) to vacate the judgment entered against him on September 27, 2007, in which the court dismissed his successive habeas petition with prejudice. Respondent (the "state") opposes the motion on various grounds. For the reasons that follow, the court defers a decision on the motion until the parties have presented additional briefing as required by this memorandum opinion and order.

I

The relevant background facts and procedural history of this case are set out in the court's prior opinion in *Hearn v. Quarterman,* 2007 WL 2809908, at *1-*4 (N.D. Tex. Sept. 27, 2007) (Fitzwater, J.) ("*Hearn II*"), and need not be repeated at length.[1]

_____

[1]The court has referred to the Fifth Circuit's opinion in *In re Hearn*, 418 F.3d 444 (5th Cir. 2005), as "*Hearn I.*" It will therefore refer to its September 27, 2007 ruling as *Hearn II*.

The court will add to the discussion in *Hearn II* what is necessary to understand the present decision.

In *Hearn II* the court dismissed Hearn's successive habeas petition that presents the claim that he is mentally retarded and that his execution is unconstitutional under *Atkins v. Virginia*.[2] The court concluded that Hearn had not made the required showing of mental retardation to proceed on a successive habeas petition. *Id.* at *1.

Texas has adopted the definition of mental retardation set out by the American Association on Mental Retardation ("AAMR"). *See Ex parte Briseno,* 135 S.W.3d 1, 7 (Tex. Crim. App. 2004) (en banc) (habeas case). "Under the AAMR definition, mental retardation is a disability characterized by: (1) 'significantly subaverage' general intellectual functioning; (2) accompanied by 'related' limitations in adaptive functioning; (3) the onset of which occurs prior to the age of 18." *Id.* (footnotes omitted).

In *Hearn II* the court focused on whether Hearn had satisfied the first of the three required elements of this definition, i.e., whether he had demonstrated "significantly subaverage general intellectual functioning." This element is "usually defined as an I.Q. of about 70 or below." *In re Salazar,* 443 F.3d 430, 432 (5th

---

There are, however, several opinions in this case, of which these are but two.

[2]536 U.S. 304 (2002).

- 2 -

Cir. 2006) (per curiam) (interpreting Texas-law definition of mental retardation). After Hearn scored well above this threshold on several IQ tests, his counsel admitted that "under the prevailing definition of mental retardation, [Hearn] does not have mental retardation." *Hearn II*, 2007 WL 2809908, at *8 (citations and internal quotation marks omitted). Hearn nevertheless argued that he was entitled to proceed on his *Atkins* claim "on the basis of brain impairment rather than significantly subaverage IQ . . . [and] that under a proposed revised definition of mental retardation, he has mental retardation." *Id.* at 6 (citations and internal quotation marks omitted). To advance this argument, Hearn relied, *inter alia*, on evidence of brain dysfunction revealed by neuropsychological testing performed by Dale G. Watson, Ph.D. ("Dr. Watson"), a Clinical and Forensic Neuropsychologist, and a medical diagnosis from Pablo Stewart, M.D. ("Dr. Stewart"), who concluded that Hearn suffers from fetal alcohol syndrome. The court rejected Hearn's argument because the brain impairment evidence did not establish significantly subaverage intellectual functioning. The court also concluded that the Texas definition "requires evidence of significantly subaverage intellectual functioning that Hearn cannot produce." *Id.* at 8.

The court also considered Hearn's shift of position at oral argument, in which he asserted that he in fact *is* mentally retarded under the Texas definition, despite IQ scores that are well above

70.   Hearn  essentially  relied  on  the  same  evidence  of
neuropsychological testing, this time contending that he could use
these test results to satisfy the Texas definition of mental
retardation.   The court rejected this argument, concluding that
"assuming that Hearn can rely on evidence of neuropsychological
testing to establish mental retardation in the face of IQ scores
materially above 70, he has simply failed to produce an opinion
from Dr. Watson that he is mentally retarded." *Id.* at 10.

After the court entered a judgment, Hearn filed the instant
motion for relief under Rule 59(e).   He requests that the court
vacate the judgment on the basis that he now has expert opinions
that establish that he *is* mentally retarded, notwithstanding the
fact that he has scored well above 70 on IQ tests.   Specifically,
Hearn presents the testimony of Stephen Greenspan, Ph.D. ("Dr.
Greenspan"), a Clinical Professor of Psychiatry and Educational
Psychology, and a proffered expert on mental retardation, for the
proposition that "in some circumstances mental retardation can be
diagnosed even though the person's full-scale IQ scores are above
the currently-prescribed cut-off point for mental retardation."
Pet'r Br. 4.   Dr. Greenspan considers in his report the question
whether "a pattern of severe neuropsychological impairments can be
used to satisfy the first prong of the [mental retardation]
definition," Greenspan Decl. 10, and he opines that "[c]ertainly,
where one is dealing with an individual with a neurological deficit

(such as Fetal Alcohol Spectrum Disorder) known to produce a highly mixed pattern, one would be highly justified . . . in concluding that highly deviant results from a neuropsychological test battery, such as the Halstead-Reitan battery used by Dr. Watson, would provide a more meaningful basis for diagnosing [mental retardation] than would full-scale IQ score." *Id.* at 13-14.

In addition to Dr. Greenspan's declaration, Hearn submits a new declaration from James Patton, Ed.D. ("Dr. Patton"), whom Hearn also proffers as an expert, and who has previously testified on behalf of Hearn's claim of mental retardation. Dr. Patton adheres to his view that, in light of the evidence of neuropsychological deficits revealed by Dr. Watson's testing and Dr. Greenspan's opinion, Hearn is mentally retarded despite IQ scores of between 87 and 93. Patton Decl. 3-4.

The state responds that Hearn is presenting the new claim "that the definition of mental retardation should be expanded to include people with normal IQ's," Resp't Resp. 1; that this new argument could and should have been raised earlier; that Hearn's position is contrary to state law; and that the court's adoption of a new definition of mental retardation would be barred under *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion).

To obtain Rule 59(e) relief, the movant must

> demonstrate valid reasons that justify the
> court's reconsideration of a prior ruling
> . . . . The task of the court in such a case
> is to strike a proper balance between [two]
> competing interests[:] the need to bring
> litigation to an end and the need to render
> just decisions on the basis of all the facts.
> In doing so, the court should consider the
> following nonexclusive factors: the reasons
> for the moving party's default, the importance
> of the omitted evidence to the moving party's
> case, whether the evidence was available to
> the non-movant before [he] responded to the
> summary judgment motion, and the likelihood
> that the nonmoving party will suffer unfair
> prejudice if the case is reopened.

*Artemis Seafood, Inc. v. Butcher's Choice, Inc.,* 1999 WL 1032798,

at *2 (N.D. Tex. 1999) (Fitzwater, J.) (citing *Freeman v. County of*

*Bexar*, 142 F.3d 848, 853 (5th Cir. 1998); *Lavespere v. Niagara*

*Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990))

(internal citations and quotation marks omitted).[3]

---

[3]Although the Rule 59(e) factors on which the court relies are drawn from a case that decided a summary judgment motion, the court finds that they provide appropriate guiding principles in the present case when they are viewed through the prism, noted below, of the fact that the court is exercising its discretion in the context of a death penalty case.

III

A

Hearn's counsel explains that, until he was preparing for the oral argument that the court convened on September 18, 2007, he did not realize that the evidence of Hearn's neuropsychological deficits and fetal alcohol syndrome might actually satisfy the "significant limitations in intellectual functioning" element of the mental retardation definition. Hearn also contends that the new evidence is important because it directly relates to one of the principal bases for the court's denial of the successive habeas petition: that Hearn had failed to offer expert testimony that supported the contention that he is mentally retarded. Hearn maintains that the evidence was not available before he responded to the summary judgment motion because his counsel could not have sought expert testimony on this issue until he realized in preparing for oral argument that the neuropsychological tests and fetal alcohol syndrome evidence could serve as a basis to satisfy the first prong of the mental retardation definition. Hearn argues that, due to the short passage of time between *Hearn II* and the presentation of the new evidence, the state will not suffer unfair prejudice if the case is reopened.

"The district court has considerable discretion in deciding whether to reopen a case under Rule 59(e)." *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 355 (5th Cir. 1993). The exercise of this discretion is guided in the context of a capital habeas case by considerations arising from the "unique nature of the death penalty and the heightened reliability demanded by the Eighth Amendment in the determination whether the death penalty is appropriate in a particular case." *Sumner v. Shuman,* 483 U.S. 66, 72 (1987) (citations omitted).

The court concludes that, when properly balanced, the Rule 59(e) factors weigh in favor of granting reconsideration. Although the court finds that Hearn's counsel, through the exercise of due diligence and reasonable competence, could have concluded earlier than he did that evidence of Hearn's neuropsychological deficits and fetal alcohol syndrome might satisfy the "significant limitations in intellectual functioning" element of the mental retardation definition, and that his counsel could have secured supporting expert testimony before responding to the state's summary judgment motion, this factor is outweighed by the importance of the new evidence and the fact that the state is unlikely to suffer unfair prejudice as a result of granting the

requested relief.[4] "The need to render just decisions on the basis of all the facts," coupled with the fact that this is a death penalty case, compels the court in this instance to reconsider its previous ruling. *See Artemis,* 1999 WL 1032798, at *2 (addressing summary judgment motion in non-death penalty context).

Moreover, the court finds that the state's arguments are unavailing. Hearn is not presenting a new claim, as the state contends, but is instead seeking to establish, based on new evidence, that he is mentally retarded under the Texas definition of mental retardation. As this court stated in *Hearn II*, "[n]either this court nor the case law suggests that IQ test scores provide the exclusive evidentiary basis on which to make [a showing of significantly subaverage intellectual functioning]." *Hearn II*, at *9 n.6.

The court also rejects the state's contention that the "state law [is] that mental retardation begins with IQ's of 70 or below." Resp't Resp. 4. Texas courts have in fact held otherwise. Although noting that "significantly subaverage intellectual functioning is defined as an IQ of about 70 or below," the Texas Criminal Court of Appeals in *Briseno* explained that "[p]sychologists and other mental health professionals are flexible in their assessment of mental retardation; thus, sometimes a person

---

[4]The state does not address the Rule 59(e) factors, and it provides no basis on which to determine that it would suffer unfair prejudice.

whose IQ has tested above 70 may be diagnosed as mentally retarded while a person whose IQ tests below 70 may not be mentally retarded." *Briseno,* 135 S.W.3d at 7 n.24. Although it is not clear on what other (non-IQ) basis the intellectual functioning prong can be established, or whether there is an IQ threshold above which a diagnosis of mental retardation is precluded, *Briseno* appears to suggest that clinical judgment, beyond strict adherence to IQ test results, can support a diagnosis of mental retardation. *See id.*

*Briseno* also explains that Texas courts will follow the AAMR definition "[u]ntil the Texas Legislature provides an alternate statutory definition of 'mental retardation' for use in capital sentencing." *Id.* at 8. Dr. Greenspan's testimony suggests that his position is in fact consistent with current AAMR principles of mental retardation diagnosis, which he contends do not intend there to be a fixed IQ cutoff point, but which instead emphasize the importance of exercising clinical judgment in determining how to interpret and apply the three definitional prongs to diagnosing mental retardation in each individual case. Greenspan Decl. 13.

C

As explained in *Hearn II*, after the Fifth Circuit grants leave to file a successive petition, this court must perform an initial role as a second gatekeeper, and determine anew whether Hearn has satisfied the requirements for the filing of such motion. *Hearn*

*II*, 2007 WL 2809908 at *7. In light of the new evidence, the court concludes that Hearn has presented a sufficient prima facie case of mental retardation.

IV

Although the court concludes that Hearn is entitled to reconsideration based on his having made the required prima facie showing of mental retardation, the court also concludes that this may not be sufficient to warrant granting Rule 59(e) relief. Before reaching the conclusion that the judgment should be vacated, the court must examine the merits of the state's summary judgment motion. In other words, Hearn may succeed at the prima facie gatekeeping stage but still fail on the merits, which would mean the judgment dismissing his habeas petition with prejudice should stand.

A

The state contends that the Texas Court of Criminal Appeals' ("CCA's") rejection of Hearn's successive application[5] constitutes an adjudication on the merits that falls within the deferential

---

[5]On March 1, 2004 Hearn moved for appointment of counsel and a stay of execution so that he could investigate a potential *Atkins* claim, and to prepare a petition for a writ of habeas corpus. On March 3, 2004 the CCA denied Hearn's motion on the basis that he had failed "to make at least a prima facie showing that such subsequent application might have merit." *Ex parte Hearn*, No. 50,116-02 (Tex. Crim. App. Mar. 3, 2004) (en banc) (per curiam).

scheme of 28 U.S.C. § 2254(d).[6]  In his successive petition before
this court, Hearn argues that the CCA's ruling should not be
accorded deference.  He maintains that the Fifth Circuit treated
the ruling "as a finding of procedural default," and that because
he was unrepresented and had no funds to pay to support the
necessary investigation, he can establish sufficient cause to
overcome the procedural default.  The state responds that in the
*Atkins* context, a CCA dismissal is an adjudication on the merits
that is entitled to deference by this court.

B

Hearn notes correctly that there has been division in this
circuit concerning whether, for purposes of the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254,
state court rulings dismissing *Atkins* claims for failure to

---

[6]28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings
> unless the adjudication of the claim——
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

establish a prima facie claim are "on the merits" or procedural. *See Moreno v. Dretke,* 450 F.3d 158, 165 n.3 (5th Cir. 2006) (noting division). The Fifth Circuit's recent pronouncement in *Rivera v. Quarterman,* 505 F.3d 349, 359 (5th. Cir. 2007), however, has unambiguously resolved the issue.[7] Taking up Judge Higginbotham's concurrence in *Morris v. Dretke,* 413 F.3d 484, 500 n.4 (5th Cir. 2005), the *Rivera* panel held that "in the *Atkins* context, Texas courts have imported an antecedent showing of sufficient specific facts to merit further review, rendering dismissal of such claims [as abuses of the writ] a decision on the merits." *Rivera*, 505 F.3d at 359 (internal quotation marks omitted). The panel explained that, "[a]lthough Texas' abuse of the writ doctrine is superficially procedural in that it has a procedural effect, determining which claims are remanded to the state trial courts for further development, it steps beyond a procedural determination to examine the merits of an *Atkins* claim." *Id.* at 360.

It should be noted in the present case that the CCA decision did not involve a dismissal of an *Atkins* petition, but rather the

---

[7]The court finds unavailing Hearn's argument that the Fifth Circuit treated the CCA decision in his case as a finding of procedural default, and that this should guide this court's consideration of the matter. Hearn appears to base this argument on the Fifth Circuit's characterization of the decision as a dismissal for abuse of the writ. *See In Re Hearn*, 376 F.3d 447, 449 (5th Cir. 2004). In that decision, however, the panel addressed only the question whether Hearn was entitled to a stay of execution and appointment of counsel. It did not make an explicit determination whether the CCA's decision was procedural or on the merits.

denial of a motion seeking appointment of counsel and a stay of execution *in preparation for* a subsequent *Atkins* application. This fact, however, does not alter this court's ultimate determination that the decision was on the merits, because it was based on a record addressing the evidentiary basis of Hearn's potential *Atkins* claim. In his motion presented to the CCA, Hearn clearly attempted to set forth evidence of possible mental retardation, submitting various academic records in order to assert "sub-average intellectual functioning." Pet'r Mot. 4. In response, the state presented IQ evidence and analysis of the *Briseno* factors that are used to determine deficiencies in adaptive behavior. That the briefing primarily addressed prima facie factors indicates that the CCA decision was based on a substantive review of the evidentiary showing.[8] The CCA thus appears to have incorporated the requirement of a prima facie showing into its determination whether to grant the pre-habeas application relief that Hearn requested.

---

[8]Such substantive review is indicative of a decision on the merits. *See Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003) ("In the context of federal habeas proceedings, adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive as opposed to procedural.") (internal citations and quotation marks omitted)).

Having determined that the CCA decision was on the merits, the court must apply the standards of § 2254(d).

> Under AEDPA, if a state court has adjudicated a habeas claims on the merits, he may receive relief in the federal courts only where the state court decision resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Rivera*, 505 F.3d at 356 (internal quotation marks omitted) (quoting 28 U.S.C. § 2254(d)). Under this standard, the court "cannot reverse a decision merely because [it] would reach a different outcome," but it "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be "unreasonable." *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) (addressing AEDPA unreasonable-application standard). In *Rivera* the Fifth Circuit explained that, according to this standard,

> [a] state court decision constitutes an "unreasonable application" of clearly established federal law . . . if the court "identifies the correct governing legal principle from Supreme Court precedent, but applies that principle to the case in an objectively unreasonable manner." If the state court's decision runs afoul of these limits, then federal court review "is

> unencumbered by the deference AEDPA normally
> requires."

*Rivera*, 505 F.3d at 356 (quoting *Woods v. Quarterman*, 493 F.3d 580, 584 (5th Cir. 2007); *Panetti v. Quarterman*, ___ U.S. ___, 127 S.Ct. 2842, 2855 (2007)).

Hearn argues that the CCA decision that he failed to make a prima facie case of mental retardation "is so patently incorrect as to be unreasonable." In support of this contention, Hearn relies on the evidence he has produced in federal court. He contends that this court is entitled to consider all the evidence before it in determining whether the CCA unreasonably applied federal law.

Although the court has considered Hearn's most recent evidence in finding that he has satisfied his prima facie burden, it must now determine whether it can consider this evidence in conducting the "unreasonable application" analysis. In their summary judgment briefing, both parties appear to rely on evidence developed subsequent to the CCA's decision in discussing the reasonableness of that ruling.[9] The parties have not, however, fully briefed this issue, particularly in light of the most recent, post-judgment

---

[9]In support of his position, Hearn points, *inter alia*, to IQ testing conducted by Mary Alice Conroy, Ph.D. ("Dr. Conroy") in 2005 (resulting in a full-scale IQ score of 74), and Dr. Patton's 2005 opinion that he is mentally retarded. The state supports its contention that the CCA did not unreasonably apply federal law mainly by pointing to Hearn's own concession that the most recent IQ tests reveal that he does not have significantly subaverage intellectual functioning, as measured by intellectual tests. The state also points out that Dr. Conroy's evaluation did not conclude that Hearn is mentally retarded.

evidence and this memorandum opinion and order.

Accordingly, the court directs the parties to brief whether Hearn has made the required showing that the CCA's decision was "unreasonable" under the standards of § 2254(d). They must also brief whether this determination is to be made in light of all evidence presently before this court, or whether this court must conduct this analysis based solely on the evidence in the record before the CCA at the time of its 2004 ruling. Hearn's supplemental brief must be filed no later than April 14, 2008. The state may file a response brief no later than May 14, 2008. And Hearn may file a reply brief no later than June 13, 2008. Because the court has established deadlines of this length, it does not anticipate that the parties will request, or that the court will grant, extensions except for compelling cause, taking into account the exercise of due diligence.

If Hearn is unable to show that the CCA's decision was "unreasonable" under the § 2254(d) standards, the court will deny Hearn's motion to vacate the judgment. If, on the other hand, Hearn makes this showing, the court will grant Hearn's Rule 59(e) motion, vacate its September 27, 2007 judgment, and proceed to an evidentiary hearing in which it conducts a *de novo* review of Hearn's *Atkins* claim.[10]

---

[10]A determination that the CCA's decision was unreasonable under § 2254(d), does not, of course, predetermine the merits of Hearn's *Atkins* claim. This analysis is restricted to the CCA's

*     *     *

Accordingly, for the reasons explained, the court defers a decision on Hearn's October 11, 2007 motion pursuant to Rule 59(e) to vacate judgment until the parties have presented the required additional briefing. The parties must comply with the briefing deadlines set out above.

**SO ORDERED.**

March 13, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

determination that Hearn failed to make a prima facie showing of mental retardation. As in *Rivera*, the court first determines whether the state court decision was unreasonable under § 2254(d) and, if it was, the court then independently reviews the merits of the *Atkins* claim. *See Rivera*, 505 F.3d at 361. Accordingly, a decision by this court to conduct an evidentiary hearing would not alone mean that Hearn has established that he is mentally retarded. The court could only make that determination after fully hearing the evidence and argument of the parties.