IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| YOKAMON LANEAL HEARN, § | |
| § | |
| Petitioner, § | |
| § | |
| VS. § | Civil Action No. 3:04-CV-0450-D |
| § | |
| NATHANIEL QUARTERMAN, Director, § | |
| Texas Department of Criminal § | |
| Justice, Correctional § | |
| Institutions Division, § | |
| § | |
| Respondent. § | |

MEMORANDUM OPINION
AND ORDER

In *Hearn v. Quarterman,* 2008 WL 679030 (N.D. Tex. Mar. 13, 2008) (Fitzwater C.J.) ("*Hearn III*"), the court directed the parties to brief two questions to assist the court in deciding whether to grant petitioner Yokamon Laneal Hearn's ("Hearn's") Fed. R. Civ. P. 59(e) motion to alter or amend the judgment dismissing with prejudice his successive habeas petition brought under *Atkins v. Virginia*.[1] In addition to briefing these questions, Hearn and respondent (the "state") have also addressed whether Hearn has satisfied the exhaustion requirements of § 2254(b) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

---

[1] The court directed the parties to brief whether Hearn had made the required showing that the Texas Court of Criminal Appeals' ("CCA's") decision is "unreasonable" under the standards of § 2254(d) of the the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, and whether this determination is to be made in light of all the evidence in the record developed before this court or is to be decided based solely on the evidence in the record before the CCA at the time of its 2004 ruling. *Hearn III*, 2008 WL 679030, at *6.

U.S.C. § 2254. The state contends that Hearn's current claim, in which he argues that he can show mental retardation despite non-qualifying IQ scores, is legally and factually unexhausted and therefore procedurally defaulted. Hearn replies that the State of Texas violated his due process rights by failing to provide him assistance of counsel so that he could present an *Atkins* claim in state court, and that he should therefore be excused from the exhaustion requirement. Hearn requests in the alternative that, if the court rejects his argument, it stay and abate this proceeding to allow him to file a habeas application in state court.

After the parties submitted their supplemental briefs, the Fifth Circuit decided *Hall v. Quarterman*, ___ F.3d ___, 2008 WL 2579273 (5th Cir. June 30, 2008) (per curiam). Although *Hall* is distinguishable from Hearn's case, the opinion highlights the substantive and procedural complexities of Hearn's case that warrant granting his Rule 59(e) motion and vacating the judgment.[2] These complexities notwithstanding, the court must still decide

---

[2] Another case decided after the parties submitted their supplemental briefs, *Moore v. Quarterman*, ___ F.3d ___, 2008 WL 2521893 (5th Cir. June 26, 2008) (en banc) (per curiam), also points out the difficulties that arise when an *Atkins* claim first becomes available after a case has been tried and the petitioner has exhausted his direct and collateral remedies. In *Moore*, however, the *en banc* court addressed the cause-and-prejudice exception to exhaustion under AEDPA. Unlike *Moore*, although in this case the court concludes that Hearn has failed to exhaust his state-court remedies, it also holds that he can still do so in state court. *Moore* is therefore of limited specific guidance in this case, apart from corroborating the difficulties that petitions of this type present.

whether Hearn is barred from obtaining habeas relief based on his failure to exhaust. For reasons the court will explain, it holds that Hearn can still exhaust his *Atkins* claim in state court. Therefore, the court in its discretion concludes that Hearn's federal petition should be stayed and abated so that he can file an *Atkins*-based habeas application in state court.[3]

I

This case is substantively and procedurally complex and not facilely fitted within the regimen contemplated under AEDPA. Unlike the paradigm *Atkins* case in which a Texas habeas court initially decides the mental retardation issue and a federal habeas court conducts deferential review under AEDPA, Hearn's case falls within a narrow category—an "*Atkins* lacuna"—of Texas prisoners who were tried, and whose first state habeas petitions were decided, before *Atkins* was handed down.[4] Consequently, Hearn's mental retardation claim has never been fully developed and presented at the state trial court or state habeas court level.

---

[3]As discussed *infra* in § II(C), the court bases this decision on *Rhines v. Weber,* 544 U.S. 269 (2005) (recognizing that district court has discretion to order stay of habeas proceeding while petitioner brings unexhausted claims in state court), and the CCA's recent modification of its two-forum rule, which enables Texas courts to consider a subsequent writ application once a federal court stays the federal habeas proceedings, *see Ex parte Soffar*, 143 S.W.3d 804 (Tex. Crim. App. 2004).

[4]Although this court rejected Hearn's first federal habeas petition a few weeks after *Atkins* was decided, the decision was functionally one that pre-dated *Atkins* because Hearn filed the petition before *Atkins* was decided.

And although the Texas Court of Criminal Appeals ("CCA") in fact adjudicated on the merits whether Hearn had made a prima facie showing of mental retardation to support an *Atkins* claim, *Hearn III*, 2008 WL 679030, at *5, "the CCA decision did not involve a dismissal of an *Atkins* petition, but rather the denial of a motion seeking appointment of counsel and a stay of execution *in preparation for* a subsequent *Atkins* application." *Id*. (emphasis in original).

Moreover, as the concurring opinion in *In re Hearn*, 376 F.3d 447 (5th Cir. 2004), pointed out, when Hearn presented his motion, he did not have counsel. *Id.* at 458 (Higginbotham, J., concurring) (referring to point in time when Hearn requested stay of execution in federal court). The Texas Defender Service, which lacked the resources to undertake Hearn's representation but was aware of Hearn's approaching execution, sought a stay and appointment of counsel to develop his claim that he is mentally retarded and ineligible for execution. *Id.* The situation when he sought a stay from this court was essentially the same as before the CCA.

Furthermore, as the Fifth Circuit panel explained,

> *Atkins,* however, had not yet been decided when Hearn filed his initial habeas petition. Although *Atkins* was issued while Hearn's first petition was pending in federal court, Texas's habeas-abstention procedure—which barred the filing of a state petition while a habeas writ was pending in federal court—effectively precluded him from seeking *Atkins* relief until his initial habeas petition was disposed of by the federal courts.

*Id.* at 454. Hearn was therefore prevented from returning to state habeas court while his federal petition was pending. And of central importance to the court's decision today,

> [u]pon the denial of his initial federal habeas petition, Jan Hemphill withdrew from her representation of Hearn. Put plainly, Hearn lost his court-appointed habeas counsel on the very day he became eligible to raise his *Atkins* claim. Hearn made various efforts to persuade Hemphill to file a successive writ petition, and even dispatched family members to the federal district court and Texas Attorney General's Office in an effort to compel her to investigate a successive claim. When all else failed, Hearn promptly contacted his current *pro bono* counsel, who conducted an expedited investigation into Hearn's records and brought such evidence before this Court. We find that Hearn has made a sufficient showing that Texas's habeas-abstention procedure, and the unavailability of qualified habeas counsel after the disposition of his initial petition, *denied him the opportunity to sufficiently investigate the factual bases underlying his Atkins claim*.

*Id.* (some emphasis added).

Assuming for present purposes that Hearn is mentally retarded, he was mentally retarded from the date *Atkins* was decided through the date of his impending execution. As a putatively mentally retarded person sitting on death row, he required assistance to present a successive habeas petition to the Texas courts. But his federal habeas counsel had withdrawn. He was relegated to volunteer counsel who, lacking time and resources, failed to persuade the CCA to grant appointment of counsel or a stay of execution. Nevertheless, shortly thereafter, the same volunteer

attorneys convinced the Fifth Circuit to grant a stay and then to allow a successive habeas petition that presented an *Atkins* claim.

Despite the factually distinguishable aspects of *Hall*, this court is hesitant to disregard *Hall*'s emphasis on the need for "a full and fair hearing . . . where such a hearing would bring out facts which, if proven true, support habeas relief." *Hall*, 2008 WL 2579273, at *2. Moreover, in *Hall*, as in Hearn's case, the petitioner was tried before *Atkins* was decided. *Id.* at *1. When the *Hall* petitioner presented his *Atkins* claim, the Texas courts rejected it after conducting a paper hearing. The Fifth Circuit held, in pertinent part, that "[t]he facts before us are a core manifestation of a case where the state failed to provide a full and fair hearing and where such a hearing would bring out facts which, if proven true, support habeas relief." *Id.* at *2.

Hearn's evidence of mental retardation now includes, *inter alia*, a declaration from an expert who opines that Hearn's neuropsychological deficits and fetal alcohol syndrome can satisfy the "significant limitations in intellectual functioning" element of the mental retardation definition, and another expert who testifies that, upon examining Hearn, and in light of the evidence of neuropsychological deficits, Hearn is mentally retarded despite IQ scores of between 87 and 93. As the court concluded in *Hearn III*, "[a]lthough it is not clear on what other (non-IQ) basis the intellectual functioning prong can be established, or whether there

is an IQ threshold above which a diagnosis of mental retardation is precluded,[*Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004) (en banc),] appears to suggest that clinical judgment, beyond strict adherence to IQ test results, can support a diagnosis of mental retardation." *Hearn III*, 2008 WL 679030, at *4.

While *Hall* is distinguishable from the present case in several respects—for example, Hall appears to have presented evidence of mental retardation that is considerably stronger than what Hearn has adduced, and the state courts in *Hall* made clearly erroneous findings, *see Hall*, 2008 WL 2579273, at *3—the fact remains that Hearn, like Hall, did not receive in state court the full and fair hearing that *Hall* requires, at least in the "unusual and unique circumstances" of this type of case, *id.* at *4.

II

A

The emphasis in *Hall* on the importance of safeguarding procedural protections for habeas petitioners who find themselves in the narrow *Atkins* "lacuna" does not, however, command that this court conduct a *de novo* evidentiary hearing on Hearn's claim.[5] Before this court can consider whether Hearn is entitled to a

---

[5]As *Hall* noted, the petitioner's *Atkins* hearings in state court were deficient in several respects. Nonetheless, Hall, unlike Hearn, actually received in state court a hearing on his *Atkins* claim. In light of the *Hall* petitioner's having presented his *Atkins* claim in state court, it was unnecessary for the panel to decide whether he had sufficiently exhausted the claim.

hearing, it must address the threshold question whether he has exhausted his *Atkins* claim, or whether, as he contends, he is entitled to be excused from exhaustion under § 2254(b)(1)(B).[6]

The state argues that Hearn's new evidence and legal argument presented in support of his Rule 59(e) motion are substantially different from that presented in state court, and that his claim has not been "fairly presented to the highest state court," as required to satisfy the exhaustion requirement. *See, e.g., Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999). The court agrees. The evidence of mental retardation that Hearn presented to the CCA in his motion for appointment of counsel and stay of execution consisted solely of his school records, which at most reflected poor performance in several subjects and grade levels from the first through the eleventh. Pet'r Mot. Appointment of Counsel 3-4. The Texas Defender Service, who represented Hearn before the CCA, explained that it lacked the staff and financial resources to investigate fully the possibility of raising an *Atkins* claim. The educational record it presented was therefore meant simply to indicate the possibility that Hearn might be mentally retarded, and to show a sufficient basis to entitle him to appointed counsel to develop his evidence further. Hearn did not attempt to satisfy through this evidence the elements of a mental

---

[6]Because the court is staying the proceedings, it need not conduct the reasonableness analysis under § 2254(d).

retardation claim under state law.[7]  Upon obtaining appointed counsel in federal court, Hearn has developed his record and evidence of mental retardation to include, *inter alia*, expert testimony, evidence of brain dysfunction revealed by neuropsychological testing, and a medical diagnosis that shows that Hearn suffers from fetal alcohol syndrome.  More than simply presenting his school records, as he did to the CCA, Hearn now addresses each element of the Texas definition of mental retardation[8] and supports each with evidence and expert testimony.

The Fifth Circuit has explained that "as a general rule dismissal is not required when evidence presented for the first time in a habeas proceeding *supplements*, but does not *fundamentally alter*, the claim presented to the state courts[,]" but "evidence that places the claims in a significantly different legal posture must first be presented to the state courts." *Anderson v. Johnson*, 338 F.3d 382, 386-87 (5th Cir. 2003) (footnote and internal quotation marks omitted).  The court agrees with the state that Hearn is now in a legal and evidentiary posture that is

---

[7]Texas has adopted the definition of mental retardation set out by the American Association on Mental Retardation ("AAMR"). *See Briseno*, 135 S.W.3d at 7.  "Under the AAMR definition, mental retardation is a disability characterized by: (1) 'significantly subaverage' general intellectual functioning; (2) accompanied by 'related' limitations in adaptive functioning; (3) the onset of which occurs prior to the age of 18." *Id.*

[8]For purposes of this conclusion, the court assumes, as it did in *Hearn III*, that Hearn's evidence is relevant to address the Texas definition, despite his reliance on non-IQ evidence.

significantly different from the one before the CCA.

Hearn does not attempt to argue that the evidence that supports his *Atkins* claim merely supplements, but does not fundamentally alter, the proof he presented in state court. Hearn contends instead that, to the extent he has not adequately exhausted state remedies, he should not be required to so under AEDPA § 2254(b)(1)(B), which excuses exhaustion if "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." *Id.* Although recognizing that there is no constitutional right to counsel in post-conviction proceedings, Hearn argues that, in his circumstances, because he was convicted before *Atkins* was decided, and because the first opportunity he had to raise an *Atkins* claim was in a successive habeas petition, Texas was obligated to provide him assistance of counsel upon presenting a colorable showing of possible mental retardation.

The court disagrees that § 2254(b)(1)(B) relieves Hearn from the requirement that he fairly present his claim in state court. The statutory exceptions to exhaustion provided in § 2254(b)(1)(B) apply against an underlying preference for exhaustion, *see* § 2254(b)(1)(A), and come into play only when recourse to state remedies is ineffective. Hearn's argument that he should be excused from exhaustion relates to why he was unable to bring an *Atkins*-based habeas application after the CCA denied his request

for counsel. Hearn has not shown, however, that he would *now* be unable to bring his *Atkins* claim in state court, based on the record as it has developed in federal court. Hearn appears to concede this in his alternative request that the court stay this action while he presents his claim in state court.

A federal court's mandate to require exhaustion is clear. "[T]he interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Weber,* 544 U.S. 269, 273 (2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982)). The doctrine of comity "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Id.* at 274 (citing *Rose*, 455 U.S. at 518). Against the backdrop of these principles, and the court's reasoning, as explained below, that Hearn is probably not procedurally barred from bringing his *Atkins* claim in state court, the court decides in its discretion to stay this action so that he may do so.

B

Perhaps the most important factor in this case that warrants a stay and abatement is that Hearn is obligated to, but has not, presented his *Atkins* claim in state court. As the court pointed out in *Hearn III*, "[i]t should be noted in the present case that

- 11 -

the CCA decision did not involve a dismissal of an *Atkins* petition, but rather the denial of a motion seeking appointment of counsel and a stay of execution *in preparation for* a subsequent *Atkins* application." *Hearn III*, 2008 WL 679030, at *5. In *Hearn III* the court did not consider this fact to affect its determination that the CCA decision was "on the merits" for the purposes of conducting the § 2254(d) analysis. *Id.* But when analyzing exhaustion, the court now deems it necessary to distinguish between the dismissal of a habeas application and the denial of a motion for appointment of counsel and a stay of execution. Unlike similar petitions brought in federal habeas court after the CCA has dismissed a petitioner's *Atkins* claim for failure to make a prima facie showing, this case does not involve the CCA's denial of a habeas application as an abuse of the writ under Tex. Crim. Proc. Code Ann. art. 11.071, § 5 (Vernon Supp. 2008). *Cf., e.g., Rivera v. Quarterman,* 505 F.3d 349, 355 (5th. Cir. 2007) ("The CCA denied both of [petitioner's] *Atkins* petitions as abuses of the writ, concluding that neither the first petition nor the second supplemented petition made a prima facie showing of retardation.") (footnotes omitted)). Hearn did not present an *Atkins* claim to the CCA. In his motion, he sought the assistance of counsel and a stay of execution so that he could develop his evidence and present such a claim. The CCA recognized this functional difference in its decision, noting that "Hearn requests a stay of execution in order

to have time to investigate a claim of mental retardation under [*Atkins*], and to prepare a subsequent application for writ of habeas corpus if his investigation uncovers evidence of mental retardation." *Ex parte Hearn*, No. 50,116-02.

The state maintains that Hearn would now be procedurally barred from returning to state court to bring the current version of his *Atkin*'s claim.[9] This position, however, seems to be based on the misunderstanding that the CCA's 2004 decision was a dismissal of a successive habeas application.[10] If the CCA's decision constituted a dismissal of a successive habeas application, this court would agree that the Art. 11.071, § 5 factors would likely now bar Hearn from presenting his *Atkins* claim

---

[9]*See* the state's May 29, 2007 renewed motion for summary judgment at 16. Because Hearn presents the alternative request for a stay in his reply brief, the state has not been able to address whether this procedure is permissible or warranted. In the interest of avoiding additional delay, however, the court will not defer a ruling while it awaits another brief from the state. Under *Rhines* the court's decision to stay the case is discretionary. Moreover, based on the state's previously asserted position, the court reasonably anticipates that the state would contend that a stay would be futile because Hearn's *Atkins* claim is procedurally barred.

[10]The state avers in its May 29, 2007 brief that "on March 2, 2004, Hearn filed a successive application for state postconviction relief . . . . On March 3, 2004, the Texas Court of Criminal Appeals denied Hearn's application . . . ." Resp't Br. 3. Although this court and the Fifth Circuit have also characterized the CCA decision as a dismissal of a successive application, *see Hearn*, 376 F.3d at 450; *Hearn v. Quarterman*, 2007 WL 2809908, at *2 (N.D. Tex. Sept. 27, 2007) (Fitzwater, J.), the court now more precisely refers to the decision as a denial of a motion for appointment of counsel and a stay of execution.

in state court. Because the CCA's decision only denied Hearn's request for a stay of execution and appointment of counsel, however, and did not address a successive habeas application, this court discerns no reason why the CCA's decision would now foreclose Hearn from now bringing an *Atkins* claim in state court. The effect of the CCA's decision was simply to leave Hearn to his own resources in preparing a subsequent habeas application, and to allow the scheduled execution to proceed unless Hearn could present sufficient grounds to halt it. Nothing in the decision precluded him from applying for habeas relief in accordance with the requirements of Texas law. And the CCA has since stated that "whether an *Atkins* claim can be recognized for the first time in a *second* post-conviction writ application will depend exclusively upon whether it fits the criteria of Article 11.071, Section 5. For those habeas applicants who filed their initial writs before *Atkins* was decided, this has not been an impediment, so long as they can establish a *prima facie* case for mental retardation." *Ex parte Blue*, 230 S.W.3d 151, 156 (Tex. Crim. App. 2007) (footnote omitted)

C

The court rests its decision to stay this action on the reasoning and requirements of *Rhines*. In *Rhines* the Supreme Court considered whether a federal district court had the discretion to stay a habeas petition that contained unexhausted claims so that

- 14 -

the petitioner could present those claims to the state court and then return to federal court once the claims had been exhausted. The Court recognized that this procedure might be necessary in limited circumstances because of the prejudicial effect created by the interplay between the AEDPA one-year statute of limitations and the requirement under *Rose v. Lundy* that federal habeas petitions that contained both exhausted and unexhausted claims be dismissed. As the Court explained, "[w]hen we decided *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions. As a result, petitioners who returned to state court to exhaust their previously unexhausted claims could come back to federal court to present their perfected petitions with relative ease." *Rhines*, 544 U.S. at 274. With the enactment of the one-year statute of limitations, "[i]f a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review." *Id.* at 275. The Court thus approved limited use of the stay-and-abeyance procedure, but it cautioned that this regimen be applied on a showing that "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

The court concludes that the unique circumstances of this case

aptly fit within the stay-and-abeyance procedure discussed in *Rhines*. First, Hearn was convicted before the Supreme Court decided *Atkins*. His first federal habeas petition was denied a few weeks after *Atkins*. Had Hearn been tried after *Atkins*, he would have had a right to appointed counsel to develop a claim of mental retardation in the state trial court. Because of the timing of *Atkins* and of his prosecution, Hearn's first opportunity to raise an *Atkins* claim was in the context of a successive habeas application, at a procedural point at which there is no recognized constitutional right to assistance of counsel. Hearn is indigent and, perhaps, mentally retarded. Volunteer counsel from the Texas Defender Service was only able to step in at the last minute to prepare an initial record to suggest that further investigation of a mental retardation claim was warranted, and that therefore Hearn was entitled to court-appointed counsel. Because the CCA denied his request for appointed counsel, Hearn was unable to develop the record and present a viable *Atkins* claim in state court. But after coming to federal court, he obtained counsel, and, as the court held in *Hearn III*, he has made a prima facie showing of mental retardation. *Hearn III*, 2008 WL 679030, at *4. The court finds that these circumstances satisfy the good cause requirement.

Second, the finding that Hearn has made a prima facie showing of mental retardation supports the conclusion that his *Atkins* claim is potentially meritorious.

Third, there is no indication that Hearn has engaged in intentionally dilatory litigation tactics. As discussed *supra* at § I, the Fifth Circuit has recounted in this case the efforts that Hearn has undertaken to bring an *Atkins* claim in state court. *In re Hearn*, 376 F.3d at 454.

D

In sum, there are several reasons that, in combination, warrant staying and abating this petition under *Rhines*. Hearn's *Atkins* claim is within the lacuna of those that arose after he was tried, exhausted his direct and collateral state court remedies, and had filed his first federal habeas petition. As an indigent, putatively mentally retarded prisoner who lacked assistance of counsel in state court, Hearn was unable to present to the CCA an *Atkins* claim that warranted appointment of counsel and a stay of execution. But with federally appointed counsel and funds to obtain expert evidence, he was able to make a prima facie showing of mental retardation in federal court. Hearn has never had a full and fair hearing of his *Atkins* claim in state court. But because the claim is unexhausted and is probably not procedurally barred, that hearing, and the initial decision about whether he is mentally retarded, must be made in state court. Principles of comity and federalism demand this. And the fact that Hearn is attempting to satisfy the Texas definition of mental retardation despite non-qualifying IQ scores provides greater support for the decision to

allow the Texas courts to decide in the first instance whether Hearn is mentally retarded under Texas law.

*Rhines* counsels that "[e]ven where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA." *Rhines,* 544 U.S. at 277. *Rhines* therefore instructs district courts to "place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 278. Accordingly, the court orders Hearn to file a habeas application in state court within 45 days of the date of this memorandum opinion and order, and, unless he obtains habeas relief in state court, to return to this court within 45 days after he exhausts his state court habeas remedies.

\* \* \*

For the reasons explained, Hearn's October 11, 2007 motion pursuant to Rule 59(e) to vacate judgment is granted, the judgment filed September 27, 2007 is vacated, and this petition is stayed and abated while Hearn pursues his state habeas remedies in accordance with this memorandum opinion and order. During the pendency of this stay, this civil action will remain closed for statistical purposes.

**SO ORDERED.**

August 12, 2008.

SIDNEY A. FITZWATER
CHIEF JUDGE