IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| YOKAMON LANEAL HEARN, § | |
| § | |
| Petitioner, § | |
| § | |
| VS. § | Civil Action No. 3:04-CV-0450-D |
| § | |
| RICK THALER, Director, § | |
| Texas Department of Criminal § | |
| Justice, Correctional § | |
| Institutions Division, § | |
| § | |
| Respondent. § | |

MEMORANDUM OPINION
AND ORDER

This capital case in which petitioner Yokamon Laneal Hearn ("Hearn") maintains that his execution is unconstitutional under *Atkins v. Virginia*[1] returns to this court following a decision of the Texas Court of Criminal Appeals ("CCA") determining that Hearn is not mentally retarded. Concluding that the decision of the CCA is not an unreasonable application of *Atkins*, and that its denial of his claim was not contrary to or an unreasonable application of clearly established federal law, the court denies the petition on the merits and dismisses this action with prejudice.

I

The court has recited the extensive procedural history of this case in prior opinions and need not do so again at length. Briefly summarized, on the eve of his scheduled execution, Hearn received permission from the Fifth Circuit to file a successive habeas

---

[1] 536 U.S. 304 (2002).

petition raising an *Atkins* claim.  *See In re Hearn*, 418 F.3d 444, 448 (5th Cir. 2005).  This court then initially found that Hearn had failed to make the prima facie showing of mental retardation and dismissed his petition with prejudice without reaching the merits.  *Hearn v. Quarterman*, 2007 WL 2809908 (N.D. Tex. Sep. 27, 2007) (Fitzwater, J.) ("*Hearn II*") (applying 28 U.S.C. § 2244(b)).  The court later allowed additional briefing, *Hearn v. Quarterman*, 2008 WL 679030 (N.D. Tex. Mar. 13, 2008) (Fitzwater, C.J.) ("*Hearn III*"), and granted Hearn's Fed. R. Civ. P. 59(e) motion to alter or amend the judgment due to the intervening opinion in *Hall v. Quarterman*, 534 F.3d 365 (5th Cir. 2008) (per curiam).  The court also granted a stay and abatement to allow the exhaustion of this claim pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005).  *See Hearn v. Quarterman*, 2008 WL 3362041 (N.D. Tex. Aug. 12, 2008) (Fitzwater, C.J.).

While these federal proceedings were stayed, Hearn returned to state court and presented his *Atkins* claim.  The CCA denied this claim on the merits.  *Ex parte Hearn*, 310 S.W.3d 424 (Tex. Crim. App.), *cert. denied*, 543 U.S. 960 (2010).  In pertinent part, it rejected Hearn's "attempts to use neuropsychological measures to wholly replace full-scale IQ scores in measuring intellectual functioning."  *Id.* at 431.  While it recognized that habeas applicants should be given the opportunity to present clinical assessment evidence to demonstrate why their full-scale IQ scores

were within the margin of error for standardized IQ testing, it held that applicants could not use clinical assessment evidence as a replacement for full-scale IQ scores in measuring intellectual functioning. Because Hearn's evidence did not demonstrate significantly subaverage intellectual functioning, the CCA denied his application. *Id.* Hearn now returns to this court seeking habeas relief for this exhausted claim under 28 U.S.C. § 2254.

II

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, consideration of the merits of exhausted claims is controlled by § 2254(d).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* AEDPA limits rather than expands the availability of habeas relief. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "By its terms § 2254(d) bars

relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784 (2011). Federal habeas review under AEDPA is highly deferential. *Id.*, 131 S.Ct. at 788; *Renico v. Lett*, 559 U.S. ___, 130 S.Ct. 1855, 1862 (2010) ("AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt."); *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir.), *cert. denied*, *Avila v. Thaler*, ___ U.S. ___, 130 S.Ct. 536 (2009).

### III

Hearn contends that the state court decision was contrary to and an unreasonable application of clearly established federal law and that habeas relief is therefore authorized by § 2254(d)(1).[2] Normally, the question whether a death-row inmate suffers from significantly subaverage intellectual functioning is a question of fact rather than a question of law or a mixed question of law and fact. *See Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006). In this case, however, the issue is determined by the CCA's rejection of Hearn's attempt "to significantly alter the current

---

[2]Respondent (the "state") contends that Hearn has expressly abandoned any argument that the state court decision was an unreasonable application of federal law. This misreads Hearn's contention, however, that the CCA's "decision in Mr. Hearn's case is 'contrary to,' not simply an 'unreasonable application of,' *Atkins*." P. Br. 14.

[Texas] definition of mental retardation." *Ex parte Hearn*, 310 S.W.3d at 430.

As noted in *Hearn II*, the Supreme Court in *Atkins* did not define mental retardation, but left the decision to the states. *Hearn II*, 2007 WL 2809908, at *7 (citing *Atkins*, 536 U.S. at 317, and *Hall v. State*, 160 S.W.3d 24, 36 (Tex. Crim. App. 2004)); *see also Bobby v. Bies*, ___ U.S. ___, 129 S.Ct. 2145, 2150 (2009) ("Our opinion did not provide definitive procedural or substantive guides for determining when a person who claims mental retardation 'will be so impaired as to fall [within *Atkins*' compass].' We 'le[ft] to the States the task of developing appropriate ways to enforce the constitutional restriction.'" (brackets in original) (quoting *Atkins*, 536 U.S. at 317)). At the time of this court's prior orders, the Texas courts had not yet decided whether the "significantly subaverage intellectual functioning" element could be established by evidence other than IQ. *See, e.g., Hearn II*, 2007 WL 2809908, at *9 n.6 ("Neither this court nor the case law suggests that IQ test scores provide the exclusive evidentiary basis on which to make this showing"); *Hearn III*, 2008 WL 679030, at *4 ("Although it is not clear on what [non-IQ] basis the intellectual functioning prong can be established, or whether there is an IQ threshold above which a diagnosis of mental retardation is precluded, [*Ex parte Briseno*, 135 S.W.3d 1, 7 (Tex. Crim. App. 2004) (en banc),] appears to suggest that clinical judgment, beyond

strict adherence to IQ test results, can support a diagnosis of mental retardation.").

Hearn now objects to how the CCA has defined this element of mental retardation. Respondent (the "state") argues that the CCA reasonably rejected Hearn's claim. It also renews its prior motion for summary judgment. That motion was filed, however, before the controlling decision of the CCA, and it is now inapposite. Therefore, the state's motion for summary judgment is denied as moot, and this claim is analyzed under § 2254(d)(1).

The standard under § 2254(d)(1) is high.

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant [a writ of habeas corpus] if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.

*Williams*, 529 U.S. at 412-13. "A 'run-of-the-mill state-court decision applying the correct legal rule' would not fit within this exception as 'diametrically different' or 'opposite in character or nature' from Supreme Court precedent." *Beazley v. Johnson*, 242 F.3d 248, 256 (5th Cir. 2001) (quoting *Williams*, 529 U.S. at 406).

"Under the 'unreasonable application' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "A state court's decision will be based on an unreasonable application of clearly established federal law when it is objectively unreasonable." *Kutzner v. Johnson*, 242 F.3d 605, 608 (5th Cir. 2001). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, 529 U.S. at 410. "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. "[A] federal court is not to substitute its judgment for that of the state court. Rather under AEDPA, federal habeas relief is proper only if the state habeas court applied federal law in an 'objectively unreasonable' manner." *Schaetzle v. Cockrell*, 343 F.3d 440, 447 (5th Cir. 2003).

IV

While these federal proceedings were stayed, Hearn returned to state court and presented his *Atkins* claim. This required the CCA to address the question "whether alternative-assessment measures

can be substituted for full-scale IQ scores in supporting a finding of subaverage intellectual functioning." *Ex parte Hearn*, 310 S.W.3d at 427. The CCA resolved this question against Hearn, explaining that while non-IQ evidence may help the determination of intellectual deficiency when the IQ evidence is within the range for mental retardation, it may not be used as a substitute for contrary IQ evidence.

> In the present case, applicant attempts to use neuropsychological measures to wholly replace full-scale IQ scores in measuring intellectual functioning. However, this court has regarded non-IQ evidence as relevant to an assessment of intellectual functioning only where a full-scale IQ score was within the margin of error for standardized IQ testing. Thus, we hold that, while applicants should be given the opportunity to present clinical assessment to demonstrate why his or her full-scale IQ score is within that margin of error, applicants may not use clinical assessment as a replacement for full-scale IQ scores in measuring intellectual functioning.
>
> The evidence before us in this application does not demonstrate significantly subaverage intellectual functioning by applicant. Accordingly, we dismiss the application.

*Id.* at 431 (footnotes omitted). This finding is entitled to deference under the AEDPA. *See* 28 U.S.C. § 2254(d) & (e).

Hearn does not dispute that his IQ evidence places him above the range for mental retardation. Instead, he complains that the CCA's decision precluding the use of non-IQ evidence to establish the mental deficiency prong in contravention to the available IQ

evidence constitutes an unreasonable application of *Atkins* because it deprives him of the ability to prove mental retardation when, as here, his IQ scores disqualify him from such a finding. This argument lacks force. The CCA has done nothing more than perform the task left open to it by *Atkins*. And even if the Supreme Court later limits the authority of the states to prescribe what evidence can be considered when determining mental retardation, the Court has not yet clearly established the precise boundaries of any such limits. Accordingly, the CCA's decision in Hearn's case could not have been an unreasonable application of *Atkins*, and its denial of his *Atkins* claim was neither contrary to nor an unreasonable application of clearly established federal law.

Although Hearn has previously made the minimum prima facie showing of mental retardation to warrant merits consideration of the claim, the CCA's subsequent resolution of his *Atkins* claim was not an unreasonable adjudication of the merits of the claim. Therefore, this successive petition is denied on the merits.

V

In accordance with Fed. R. App. P. 22(b) and 28 U.S.C. § 2253(c), and after considering the record in this case, the court denies Hearn a certificate of appealability. Hearn has failed to show (1) that reasonable jurists would find this court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the

petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  Hearn has previously been allowed to proceed *in forma pauperis*, and this status is continued for purposes of appeal.

\* \* \*

Hearn's habeas petition is denied, and this action is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

March 3, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE